**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LATRIECE NECOLE EMBRY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-01393-O-BP** |
| | § | |
| **SAFELITE FULFILLMENT, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss and Brief in Support that Defendant Safelite Fulfillment, LLC ("Safelite") filed on April 22, 2026 (ECF No. 20), the response that *pro se* Plaintiff Latriece Embry filed on May 13, 2026 (ECF No. 22), and the reply that Safelite filed on May 27, 2026 (ECF No. 23). After reviewing the pleadings and the applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT in part** and **DENY in part** Safelite's Motion.

## I.      BACKGROUND

In June 2021, Plaintiff Latriece Embry began working for Safelite and allegedly faced discrimination and harassment. So, in May 2023, Embry sought and obtained transfer to a remote position with the company where the prior difficulties ended, but new ones emerged. Because Embry is an individual who has learning disabilities, generalized anxiety, and other conditions that have impacted her concentration, learning, and job performance, she requested accessibility accommodations from Safelite that included text-to-speech software. She alleges that Safelite declined her requests and instead "offered options that would have negatively impacted [her] employment." ECF No. 18 at 2. Embry "experienced worsening medical symptoms, emotional

distress, and significant difficulty performing the essential functions of her job." *Id.* Thereafter, Embry filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a right-to-sue letter on September 11, 2025. *See* ECF No. 20-1 at 2; ECF No. 22 at 10 (photo of right-to-sue letter attached for the first time in Embry's response to the pending Motion to Dismiss); *see also Parsons v. TransUnion*, No. 4:25-cv-00597-Y-BP, 2026 WL 852196, at *7-8 (discussing the Court's ability, although disfavored, to consider a photograph of a document attached to a response).

Embry alleges Safelite became aware of her EEOC charge that same day and by September 22, 2025, had "initiated a company-wide rollout of an arbitration agreement." ECF No. 18 at 3. Some weeks later, a Safelite representative informed Embry that if she did not sign the arbitration agreement, she would be terminated. Embry did not sign, and Safelite terminated her employment on October 18, 2025. Afterword, Embry allegedly notified the EEOC of these new developments, but she explains that she never heard back from her caseworker. As recently as March 30, 2026, Embry asserts that she once again contacted the EEOC and "began the process of filing a Charge of Discrimination related to her termination." *Id.* at 3.

On December 10, 2025, Embry sued Safelite in this Court. By Order dated March 26, 2026, the Court ordered her to file an Amended Complaint pleading her best case. ECF No. 17. She did so on April 8, 2026, bringing claims of disability discrimination, failure to accommodate, and retaliation under the Americans with Disabilities Act of 1990 ("ADA") as well as "retaliatory and discriminatory termination" under the ADA and "other applicable federal laws." ECF No. 18 at 3-5. The Amended Complaint is the live pleading in this case. *See generally id.* On April 22, 2026, Safelite moved to dismiss the Amended Complaint. ECF No. 20.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Importantly, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 365 (5th Cir. 2003).

### B.   *Pro se* parties

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97,

3

106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, "even a liberally-construed *pro se* civil rights complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (internal quotation marks omitted).

### III.   ANALYSIS

**A.   The Court should dismiss all of Embry's claims except in part her ADA retaliation claim for failure to exhaust administrative remedies.**

"[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). "This rule has an important policy justification. One of the central purposes of the employment discrimination charge is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)). Therefore, the plaintiff must "file[] a timely charge with the EEOC and receive[] a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) (citing *Dao*, 96 F.3d at 788-89).

"In determining whether a plaintiff has exhausted a particular claim, 'the scope of an EEOC complaint should be construed liberally.'" *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021). But the scope of a plaintiff's EEOC complaint is nonetheless "limited to scope of the

EEOC investigate which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Hous.*, 906 F.2d 177, 179 (5th Cir. 1990)). Therefore, the plaintiff must provide enough specific facts in her EEOC charge that would trigger the EEOC to investigate a given claim. *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

Here, Embry filed one charge with the EEOC, which reads as follows:

> I began working for the above-named Respondent in or around June 2021 and my most recently held job position is Special Service Representative.
>
> Beginning in or around April 2023, I made a formal complaint of sex-based harassment and sexual harassment by Eric (LNU) to [sic] which has been terminated. Shortly after, I began experiencing retaliation in the form of employees posing as customers being difficult on the phone and failure to honor my reasonable accommodations in or around July 2025. Further, I have been denied promotions due to not maintaining a 30-hour work week despite no written policy of such.
>
> I believe I was discriminated against due to my Sex (Female) and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII) and on the basis of my disability in violation of the Americans with Disabilities Act of 1990, as amended (ADA).

ECF No. 20-1 at 2.

Safelite argues that this EEOC charge lacks "any facts . . . regarding the existence of, and intention to pursue" any of the claims Embry now raises. *See* ECF No. 20 at 9-12.

### 1.    Failure to Accommodate

Safelite first argues that Embry's claim that it "fail[ed] to honor [her] reasonable accommodations in or around July 2025" is insufficient because Embry "alleges no facts regarding the existence of a cognizable disability, and . . . no facts to suggest that Plaintiff required a *medical* accommodation protected by the ADA, which Safelite denied." *Id.* at 10 (emphasis in original)

5

(citing ECF No. 20-1 at 2). Further, Safelite asserts that it could not have understood the meaning of "failure to honor my reasonable accommodations" to refer specifically to a claim arising under the ADA when that phrase immediately followed a sentence alleging sex-based harassment and immediately preceded a sentence concerning Safelite's alleged failure to promote Embry. *See id.*

Embry contends in response that she "expressly referenced disability and the need for reasonable accommodations within the narrative portion of the Charge." ECF No. 22 at 3. Embry is correct that she mentioned Safelite's "failure to honor [her] reasonable recommendations" and two sentences later alleged discrimination "on the basis of [her] disability in violation of the Americans and Disabilities Act of 1990." ECF No. 20-1 at 2.

But a passing reference to some kind of disability claim is insufficient to give notice. Although the Court "must not strictly construe the EEOC charge," since "a person filing an EEOC charge is usually not represented by counsel," *Hayes v. MBNA Tech., Inc.*, No. 3:03-cv-1766-D, 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004), this principle does not relieve plaintiffs of their burden to "provide enough detail to articulate the basis of their allegations." *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 427 (W.D. Tex. 2025). "[T]he proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation, and to put an employer on notice of the existence *and nature* of the charges against him." *Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 272-73 (5th Cir. 2013) (emphasis added) (internal citation omitted) (citing *Manning*, 332 F.3d at 878).

Here, Embry merely alleged that Safelite failed to "honor [her] reasonable accommodations," and this is all she said on the matter. She did not explain what accommodations she referred to, how Safelite did not honor them, or any other facts to substantiate her allegation. *See* ECF No. 20-1 at 2. This is insufficient to put Safelite on notice of her ADA failure to

accommodate claim, and as a result, Embry did not administratively exhaust this claim.

### 2.    Retaliation

Safelite next asserts that Embry's ADA retaliation claims are factually insufficient. ECF No. 9-12. Safelite argues that Embry's discrimination charge did not mention the two incidents on which she now bases her retaliation claim— (1) Safelite's requiring her to sign an arbitration agreement under threat of termination and (2) terminating her employment when she refused to sign. Therefore, Safelite contends that Embry did not exhaust her ADA retaliation claim. *Id.* at 11-12 (citing ECF No. 18 at 4-5). Further, Safelite asserts that because the alleged retaliatory conduct in this case post-dates the charge, Embry should have filed an amended charge. *Id.* Embry argues in response that "retaliation claims arising after the filing of an EEOC charge do not require a separate charge." ECF No. 22 at 3 (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981)).

"[W]hen a retaliation claim grows out of a properly filed employment discrimination charge, it is not necessary for a plaintiff to file a second charge specifically alleging retaliation." *Blanchet v. Chevon/Texaco Corp.*, 368 F. Supp. 2d 589, 602 (E.D. Tex. 2004) (citing *Gupta*, 654 F.2d at 414). "If . . . however, the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust her administrative remedies on that claim." *Id.* at 603 (cleaned up). Here, Embry names two actions that caused Safelite's retaliation against her: "requesting reasonable accommodations" and "filing a Charge of Discrimination with the . . . EEOC." ECF No. 18 at 4.

As with Embry's claim that Safelite failed to accommodate her in violation of the ADA, Embry's allegation that Safelite retaliated against her for requesting reasonable accommodations finds no factual support in her EEOC charge. *See* ECF No. 20-1 at 2 (noting, in total, that Embry "began experiencing retaliation in the form of . . . failure to honor [her] reasonable

7

accommodations in or around July 2025" and that she was "discriminated against . . . in retaliation for engaging in protected activity . . . on the basis of [her] disability."). Because the EEOC charge does not contain any factual details to support this latter claim, Embry has not exhausted it.

But the analysis is different with a claim alleging retaliation in response to the act of filing an EEOC charge. The decision of the court in *Gupta* finds "an exception to the exhaustion requirement for claims asserting retaliation for filing an EEOC complaint." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 774 (S.D. Tex. 2009). As the Fifth Circuit explained in that case, "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge." *Gupta*, 654 F.2d at 414. And requiring two distinct EEOC charges—the initial one that spawned the retaliation and the subsequent one that reported it—would "serve no purpose except to create additional procedural technicalities." *Id.*

Accordingly, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim . . . when it grows out of an administrative charge that is properly before the court." *Id.* Safelite does not challenge the propriety of Embry's EEOC charge, and a review of the record demonstrates that it was timely filed. While some courts have considered whether *Gupta* is still good law, "[u]ntil the Supreme Court or Fifth Circuit reassess the holding of *Gupta*, this court is bound to follow it." *Smith v. Dallas Cnty. Hosp. Dist.*, No. 3:13-cv-0792-G-BN, 2014 WL 645248, at *4 (N.D. Tex. Feb. 19, 2014); *see also Morgan v. Bray*, No. 24-60156, 2025 WL 752545, at *3 n.13 (5th Cir. 2025) (citing, and not disturbing, *Gupta*).

Importantly, however, the Fifth Circuit has not applied *Gupta* to claims in which a plaintiff alleges both retaliation *and* discrimination. *E.g.*, *Simmons-Myers*, 515 F. App'x at 273-74. To do otherwise would "require[] [the plaintiff] to return to the EEOC and exhaust her administrative remedies with respect to her discrimination claim, while proceeding with litigation on her

retaliation claim." *Id.* at 274. "Permitting simultaneous proceedings such as these for the same inciting event would thwart the administrative process and peremptorily substitute litigation for conciliation." *Id.* (cleaned up).

Here, Embry alleges Safelite retaliated against her for filing the EEOC charge by requiring her to sign an arbitration agreement and terminating her when she refused. ECF No. 18 at 4-5. As to the latter event, she alleges her termination "was the result of unlawful discrimination and retaliation." *Id.* at 5. *Gupta* is therefore inapplicable. *Gupta* "creat[ed] [an] exception for a claim involving only retaliation 'growing out of an earlier charge,' not a retaliation and discrimination claim simultaneously alleged." *Simmons-Myers*, 515 F. App'x at 273 (quoting *Gupta*, 654 F.2d at 414). Therefore, the *Gupta* exception" that "only applies when . . . [a] claim is one of retaliation" does not save Embry's ADA retaliation claim premised on her termination. *Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 370 (5th Cir. 2017)).

As for the other alleged "inciting event" (the alleged adverse action of compelling Embry to sign an arbitration agreement), when liberally constructed, Embry's Complaint does not allege that this action was discriminatory in nature, but instead merely retaliatory. For that reason, *Gupta* does apply, and therefore, even though Embry did not administratively exhaust her retaliation claim premised on this adverse action, such a claim is not barred.

### 3.  Discrimination

Finally, Safelite argues that Embry's EEOC charge includes insufficient facts to support her claim for ADA discrimination. ECF No. 9-10. In her Amended Complaint, the only incident Embry specifically cites in support of this claim is her termination. *See id.* at 4 ("Defendant took adverse employment actions against Plaintiff, including termination of her employment.").

But a reference to her termination does not appear in the EEOC charge, and outside the

hypothetical context of a retaliatory termination, this deficiency defeats Embry's claim. *See Phillips*, 715 F. App'x at 370 (the *Gupta* exception to administrative exhaustion "only applies when the new claim is one of retaliation"); *see also Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-cv-4997-D, 2016 WL 1161784, at \*5 (N.D. Tex. Mar. 22, 2016) ("[T]he complaint may encompass any kind of discrimination like or related to allegations *contained in the EEOC charge*." (cleaned up) (emphasis added)). Accordingly, Embry's discrimination claim is also barred.

> **B.      Embry has not administratively exhausted her remedies in her subsequent communications with the EEOC.**

In her Amended Complaint, Embry states that she has, since her termination, had "multiple communications to her EEOC caseworker," and in March 2026 "began the process of filing a Charge of Discrimination." ECF No. 18 at 3. Nevertheless, these interactions with the EEOC do not constitute any form of administrative exhaustion. "[A]n employee must comply with the ADA's administrative prerequisites prior to commencing an action in federal court against her employer for violation of the ADA." *Dao*, 96 F.3d at 789 (5th Cir. 1996). This consists of "fil[ing] a timely charge with the EEOC and receiv[ing] a statutory notice of right to sue." *Taylor*, 296 F.3d at 379. Embry has therefore failed to administratively exhaust every claim in her Amended Complaint other than her claim under the ADA for retaliation arising from Safelite allegedly requiring her to sign an arbitration agreement in retaliation for filing an EEOC charge.

> **C.      Chief Judge O'Connor should dismiss unexhausted claims without prejudice.**

When a court dismisses a claim for failure to exhaust administrative remedies, the dismissal is without prejudice, as the claimant has the right to return to court after exhausting applicable administrative remedies if possible. *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997); *Martin K. Eby Const. Co., Inc. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor*, 127 F.3d at 478). Thus, the Court should dismiss Embry's claims other than

her ADA retaliation claim without prejudice to Embry's rights to reassert those claims after she administratively exhausts them, if she can do so under applicable law.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT in part** and **DENY in part** Safelite's Motion to Dismiss (ECF No. 20). Specifically, he should **DISMISS without prejudice** all of Embry's claims except for her claim under the ADA for retaliation, limited to the factual circumstances of Safelite retaliatorily requiring her to sign an arbitration agreement because she filed an EEOC charge.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on May 28, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

11